TIMOTHY CARNEY, Plaintiff-Appellant and Cross-Appellee, v. MIKE DONLEY et al., Defendants-Appellees and Cross-Appellants.

Second District No. 2—92—1124

Opinion filed May 10, 1994.—Rehearing denied June 9, 1994.

Alan J. Berger, of Wauconda, for appellant.

Dean P. Vanek, of Nidal Z. Zayed & Associates, of Chicago, for appellees Mike Donley, Greg Loomer, Mike Sullivan, and Jane Sullivan.

Robert Nesbit and Vincent A. Lavieri, both of Kovitz, Shifrin & Waitzman, of Arlington Heights, for appellee Board of Managers, Harbour Club Condominium Association.

JUSTICE PECCARELLI delivered the opinion of the court:

This lawsuit arose from a dispute between condominium unit owners. Plaintiff, Timothy Carney, a unit owner in the Harbour Club Condominium Association (Association), appeals from a summary judgment entered by the circuit court of Lake County in favor of defendants, Mike Donley, Greg Loomer, Mike Sullivan, and Jane Sullivan, also unit owners in the Association (collectively the individual defendants), and the board of managers (Board) of the Association. During the time period in question, Donley was president of the Board.

Plaintiff contends that: (1) the circuit court erred in entering summary judgment in defendants' favor because certain balcony extensions erected by the individual defendants were not approved by a unanimous vote of all the condominium owners; and (2) the Board and its individual members breached fiduciary duties to plaintiff and the other unit owners of the Association by allowing the erection of the balcony extensions and plaintiff is therefore entitled to recover attorney fees. Both the Board and the individual defendants filed cross-appeals which contend that the circuit court erred when it did not impose sanctions on plaintiff. We reverse and remand with directions.

The Association is comprised of the owners of the 91 condominium units within the Association's property on Bangs Lake in Wauconda, Illinois. The property includes three four-story buildings. Under the Association's declaration and bylaws (Declaration), the Association is responsible for the overall administration of the property through the Board. The Board and its officers administer the property on a day-to-day basis.

The property consists of the units and the common elements. The Declaration defines the common elements as "all portions of the property except the units, including limited common elements unless otherwise specified." The Declaration defines limited common elements as "a portion of the common elements *** for the use of a certain unit or units to the exclusion of other units, including, but not limited to balconies and patios."

The individual defendants own three condominium units in the Association. The three units are on the lake side of one of the Association's buildings on the second, third, and fourth floors directly above or below each other. The units originally each had a five-foot-

wide balcony which extended from the outside wall of the building. The balconies overlooked the lake and a concrete patio which was connected to a common room directly beneath the individual defendants' units. Both the patio and the common room were part of the common elements.

In the fall of 1990, the individual defendants decided that they wanted to widen the balconies appurtenant to their units by adding an additional 10 feet to each balcony, effectively creating sun decks. According to affidavits signed by Donley and the Board's secretary, Martin VanDerharst, at an open Board meeting on February 19, 1991, Donley presented a proposal to the Board to extend the balconies appurtenant to the units of the individual defendants by 10 feet. Donley's affidavit states that he fully disclosed all the relevant facts, including his interest in the proposal. The affidavits state that the Board scheduled the matter for a vote at the May 1991 open meeting and placed the proposal on the agenda for the May meeting. VanDerharst's affidavit states that "the time, place and agenda of all open meetings, including the meeting of May 14, 1991, is posted and sent to all unit owners of Harbour Club Condominium."

The minutes of the May 14, 1991, Board meeting indicate that during the meeting Donley presented a proposal to extend the three balconies appurtenant to the individual defendants' units by adding 10 feet to each. The Board voted unanimously to accept Donley's proposal if certain conditions regarding funding, permits, and insurance were met.

In order to extend the balconies as proposed, it would be necessary to break out some of the concrete in the common area patio in order to drive poles to support the balcony extensions into the ground through the patio. The balcony extensions would also occupy some of the air space above the common area patio.

After construction of the balcony extensions began in the fall of 1991, plaintiff sought injunctive relief. Plaintiff first obtained a temporary restraining order which briefly halted the construction of the balcony extensions. However, plaintiff was unsuccessful in two attempts to obtain preliminary injunctions designed to continue the halt of the construction of the balcony extensions.

Construction resumed and the balcony extensions were completed as planned in November 1991. The parties dispute whether plaintiff acquiesced in the construction of the balcony extensions in November 1991. Defendants maintain that plaintiff attended a special Board meeting on November 2, 1991, and after a discussion of the matter stated that he would withdraw his suit. Plaintiff denies this.

After the balcony extensions were completed, plaintiff sought a

mandatory injunction which would require the removal of the balcony extensions and the restoration of the common elements to their original condition. Plaintiff's amended complaint claims that the construction of the balcony extensions improperly diminished the quantity and quality of plaintiff's and the other unit owners' property rights in the common elements. The complaint also sought a determination that the Board and Donley be found to have breached their fiduciary duties and be held liable for plaintiff's costs and attorney fees.

The circuit court denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment. The court also subsequently denied plaintiff's motion for reconsideration and defendants' motions for sanctions. Plaintiff's appeal and defendants' cross-appeals followed.

On appeal, plaintiff first contends that the circuit court erred when it granted defendants' motion for summary judgment and denied plaintiff's motion for summary judgment. A court should grant summary judgment when the pleadings, depositions, exhibits, and admissions on file, together with the affidavits submitted, construed strictly against the movant and liberally in favor of the opponent, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Summary judgment is a drastic means of disposing of litigation and should only be granted when the right of the moving party is clear and free from doubt. (*Purtill*, 111 Ill. 2d at 240.) In appeals from summary judgment rulings, a reviewing court conducts a *de novo* review (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102) based on the record as it existed when the motion was heard (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272).

Here, the parties agree that the dispositive issue is whether the Declaration authorized the Board to approve the balcony extensions. Although the parties dispute whether plaintiff was properly notified of the Board's actions, the parties do not dispute the facts surrounding the construction of the balcony extensions such as the dimensions of the extensions, that the common area patio was part of the common elements, that the support posts for the balcony extensions go through the patio, and that the balcony extensions occupy some of the air space above the patio. Because there are no disputed questions of material fact, we may properly address *de novo* the issue of whether the Declaration authorized the Board to approve the balcony extensions.

Defendants assert that the Declaration expressly authorized the Board to approve the balcony extensions. Both the Board and the individual defendants cite the definitions of common elements and limited common elements quoted above. Both also cite the following provisions of the Declaration:

"Art. IV, par. 1 *Description*. Except as otherwise in this Declaration provided, the limited common elements shall consist of all portions of the common elements set aside and allocated for the restricted use of particular units. Without limiting the generality of the foregoing, the limited common elements shall include any balcony or patio, or any other facility appurtenant to a unit.
\*\*\*

Art. IV, par. 3 *Use*. A valid exclusive easement is hereby declared and established for the benefit of each unit and its owner, consisting of the right to use and occupy said unit and the limited common elements assigned to said unit; provided, however, that no owner shall decorate, fence, enclose, landscape, adorn or alter such limited common element in any manner unless he shall first obtain the written consent of the Board of Managers.
\*\*\*

Art. IX, par. 3 *Alterations, Additions or Improvements*. No alterations of any common elements or any additions or improvements thereto, shall be made by any unit owner without the prior written approval of the Board."

In addition, the Board cites the following provisions of the Declaration:

"Art. V, par. 3 *Easements*.
a) Encroachments. \*\*\* [I]f by reason of the design or construction of any unit, it shall be necessary or advantageous to an owner to use or occupy any portion of the common elements for any reasonable use appurtenant to said unit, which will not unreasonably interfere with the use or enjoyment of the common elements by other unit owners \*\*\* valid easements for the maintenance of such encroachment and such use of the common elements are hereby established and shall exist for the benefit of such unit and the common elements, as the case may be, to the extent of such encroachment so long as all or any part of the building shall remain standing \*\*\*.
\*\*\*

Art. VII, par. 4 *Board's Determination Binding*. In the event of any dispute or disagreement between any unit owners relating to the property, or any question of interpretation or application of the provisions of the Declaration or by-laws [*sic*], the determination thereof by the Board shall be final and binding on each and all of such unit owners."

We note that the Board failed to include a portion of the text of

article V, paragraph 3, which immediately follows the provisions quoted above. The excluded text states:

"[P]rovided, however, that in no event shall a valid easement for any encroachment or use of the common elements be created in favor of any owner if such encroachment or use is detrimental to or interferes with the reasonable use and enjoyment of the property by the other owners if it occurred due to the intentional, negligent or willful conduct of any owner or his agent."

Defendants also cite other provisions which require prior written consent of the Board for any obstruction to the common elements, or storage in the common elements, or the placing of anything on the outside walls or roof of any condominium building.

Defendants argue that these provisions, particularly when read in the light of the Declaration as a whole and in light of the Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 1992)), show that the Board had the authority under the Declaration to approve the balcony extensions.

Plaintiff counters by citing other provisions of the Declaration. Plaintiff primarily relies on article III, paragraph 2, which provides:

"*Ownership of Common Elements.* Each owner shall own an undivided interest in the common elements as a tenant in common with all the other owners of the property, and, except as otherwise limited in this Declaration, shall have the right to use the common elements for all purposes incident to the use and occupancy of his unit as a place of residence, and such other incidental uses permitted by this Declaration, which right shall be appurtenant to and run with his unit. The extent or amount of such ownership shall be expressed by a percentage amount and, once determined, shall remain constant, and may not be changed without unanimous approval of all owners, except pursuant to the Illinois Condominium Act."

Plaintiff also cites article XIX, paragraph 8, which provides that at least three-fourths of the unit owners may amend the Declaration but also states that: "[e]xcept to the extent authorized by provisions of the Act, no amendment to the condominium instrument shall change the boundaries of any unit or the undivided interest in the common elements."

Plaintiff asserts that these provisions establish his tenancy in common rights to the common elements, including the common area patio and common room. Plaintiff argues that under these provisions his interest in the common elements may not be diminished without the unanimous vote of the unit owners. Plaintiff sees nothing in the Declaration which would allow the Board to approve an extension of a limited common element and its exclusive easement into the common areas which conflicts with unit owners' enjoyment of the com-

mon area and diminishes the common area without a unanimous vote. Acknowledging that the Declaration and the Act deserve primary reliance, plaintiff concludes that he has residual common-law property rights as a tenant in common and that the balcony extensions constitute a trespass of his rights which is intolerable without unanimous approval of the unit owners.

When a controversy regarding the rights of a condominium unit owner in a condominium arises, we must examine any relevant provisions in the Act and the Declaration or bylaws and construe them as a whole. (*Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 532.) Here, the parties have not cited and our search has not revealed provisions in the Act which might override the relevant provisions in the Declaration. Accordingly, we rely primarily on the Declaration for our resolution of this issue.

Because the facts are not disputed, and because condominium declarations are covenants running with the land, we need only examine the language of the Declaration in this case, to the extent the language is unambiguous, to determine whether summary judgment for either party was proper. (*334 Barry In Town Homes, Inc. v. Farago* (1990), 205 Ill. App. 3d 846, 849.) "The paramount rule for the interpretation of covenants is to expound them so as to give effect as to the actual intent of the parties as determined from the whole document construed in connection with the circumstances surrounding its execution." *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 331.

Reading the Declaration as a whole in light of the Act, we agree with defendants that there is a clear intent in the condominium instruments that the Board have broad authority to manage and administer the property, including the common elements and limited common elements. (See 765 ILCS 605/18.4 (West 1992).) However, we do not agree that the Board's authority extends to approving the diminishment of the common elements by granting an individual unit owner exclusive use of some part of the common elements. In order for this to occur, a unanimous vote of the unit owners is required by article III, paragraph 2, of the Declaration.

Several Illinois cases support our interpretation of the Declaration. In *Stuewe v. Lauletta* (1981), 93 Ill. App. 3d 1029, the developer of a condominium building granted defendant unit owners a lease with a covenant for a parking space in a location which had originally been part of the common elements. After plaintiff condominium association took over management of the building, it brought suit contending the lease and covenant were ineffective with respect to the parking space because the developer had no right to lease part of the common elements. (93 Ill. App. 3d at 1030-31.) The appellate

court construed language in the declaration ("Each owner shall own an undivided interest in the common element as a tenant in common with all the other owners of the property \*\*\* [t]he extent or amount of such ownership \*\*\* shall be expressed by a percentage amount, and, once determined, shall remain constant, and may not be changed without unanimous approval of all owners") which is very similar to the language in the Declaration here. (93 Ill. App. 3d at 1031.) The court concluded that "the specific language of the Declaration requires approval of all owners before the common elements could be diminished." (93 Ill. App. 3d at 1031.) Here, under virtually identical language, a unanimous vote was also necessary.

In *Schaumburg State Bank v. Bank of Wheaton* (1990), 197 Ill. App. 3d 713, the court addressed the question of whether an easement granted to a third party for the nonexclusive use of a condominium's driveway (part of the common elements) constituted a change in the percentage of common ownership of a unit owner and therefore required a unanimous vote. The court concluded that where the percentage of common ownership remains the same, the granting of a nonexclusive use or easement over common element areas did not diminish the unit owner's undivided interest in the common elements. (197 Ill. App. 3d at 721.) However, the court went on to say "[a]n individual unit owner's undivided interest would only be diminished if the use or easement was exclusive and, as a result, the unit owner was precluded from using a portion of the common elements to which he previously had access." (197 Ill. App. 3d at 721.) Here, plaintiff's ownership interests were diminished because the erection of the balcony extensions amounted to an exclusive use or easement of part of the patio and as a result plaintiff was precluded from using a portion of the common elements to which he previously had access.

In *Sawko v. Dominion Plaza One Condominium Association No. 1-A* (1991), 218 Ill. App. 3d 521, part of plaintiff condominium unit owner's complaint alleged that a condominium board improperly approved the change of formerly nonexclusive parking spaces in the common elements in a garage to exclusive parking spaces. After determining that the board granted exclusive use to portions of the common elements which were formerly designated as nonexclusive use portions, the court relied on *Stuewe* and *Schaumburg State Bank* to conclude that the allocation of the spaces for exclusive use diminished plaintiff's interests in the common elements. (218 Ill. App. 3d at 529-30.) The court reversed summary judgment in favor of the defendant association and granted summary judgment in favor of plaintiff unit owner. Here the same thing has happened. The Board

granted exclusive use to portions of the common elements which were formerly designated as nonexclusive use portions.

■ Based on these cases, it is clear that the construction of the balcony extensions diminished plaintiff's ownership interests in the affected common elements. Contrary to article III, paragraph 2, of the Declaration, plaintiff's ownership interests were changed without the requisite unanimous approval of all unit owners. Accordingly, we conclude that the circuit court erred when it granted summary judgment in favor of defendants.

Defendants' reliance on *Lake Barrington Shores Condominium Ten Homeowners Association v. May* (1990), 196 Ill. App. 3d 280, is misplaced. We acknowledge that *Lake Barrington Shores (LBS)* seems, at first glance, applicable because of the similarity in the fact patterns in that case and this case. However, upon closer scrutiny we find that *LBS* is not controlling for the following reasons: *LBS* focused on the concept of encroachment because the declaration there stated that the board could not approve encroachments on common elements, while this case focuses on whether plaintiff's ownership rights were diminished; similarly, *LBS* did not address in depth the issue of whether the board there had the authority to approve an extension of limited common elements at the expense of common elements, while in this case that issue was critical; *LBS* did not address the question of diminishment of a unit owner's property rights in an area of the common elements which was actually used by unit owners, while in this case the unit owners' actual use and enjoyment of a patio by a beach was diminished by the balcony extensions and their support poles driven through the patio; and in *LBS* there was evidence that a number of other unit owners had previously extended their balconies in a manner similar to the unit owner in question there, while in this case no other unit owners had previously extended their balconies as the individual defendants did.

We also conclude that plaintiff was entitled to summary judgment. There are no disputed questions of material fact, and plaintiff is entitled to judgment as a matter of law. As seen above, it was improper to diminish plaintiff's ownership rights in the common area patio without unanimous approval of the unit owners. The individual defendants' construction of the balcony extensions diminished the plaintiff's ownership rights. The unit owners did not unanimously approve this change. Therefore, plaintiff is entitled to summary judgment for injunctive relief.

■ Plaintiff next contends that Donley and the other Board members breached their fiduciary duties to the unit owners, including plaintiff, when they knowingly acted contrary to the Declaration by

approving the balcony extensions without a unanimous vote. Plaintiff asserts that this breach of fiduciary duty makes Donley and the other Board members liable to plaintiff for his costs and attorney fees incurred in vindicating the rights of the unit owners.

The individual members of the board of managers of a condominium association owe a fiduciary duty to the unit owners. (765 ILCS 605/18.4 (West 1992); *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 533.) This fiduciary duty requires that Board members act in a manner reasonably related to the exercise of that duty, and the failure to do so results in liability for the Board and its individual members. (*Wolinsky*, 114 Ill. App. 3d at 533-34.) When a board properly exercises its business judgment in interpreting its own declaration, we will not find the board's interpretation a breach of fiduciary duty. See *Yorkshire Village Community Association v. Sweasy* (1988), 170 Ill. App. 3d 155, 159.

Here, we conclude that the Board members did not breach their fiduciary duty to the unit owners when they interpreted the Declaration to give the Board the authority to approve the balcony extensions. The record shows that the Board sought legal advice before reaching its decision and relied on that advice in reaching its decision. Affidavits establish that Donley recused himself and fully revealed his interest in the balcony extensions to the Board. Under these circumstances, we cannot say that the Board acted unreasonably or failed to exercise properly its business judgment. Accordingly, plaintiff's request for costs and attorney fees based on an alleged breach of fiduciary duties by Donley and the other Board members when they approved the balcony extensions without the unanimous vote of the unit owners is denied.

Defendants' cross-appeals essentially contend that plaintiff should be sanctioned for bringing a frivolous suit and pursuing a frivolous appeal. Because of our determinations that the trial court erred in granting defendants' motions for summary judgment and that plaintiff was entitled to summary judgment, defendants' cross-appeals are obviously without merit.

Based on the foregoing, we reverse the judgment of the circuit court of Lake County granting summary judgment to defendants and remand the cause to the circuit court with instructions to enter summary judgment and injunctive relief in favor of plaintiff.

Reversed and remanded with directions.

DOYLE and COLWELL, JJ., concur.