# Illinois Official Reports

## Appellate Court

---

### *Feliciano v. Geneva Terrace Estates Homeowners Ass'n*,
### 2014 IL App (1st) 130269

---

| | |
|---|---|
| Appellate Court Caption | MARC FELICIANO and CAROLYN PLEYTO-FELICIANO, Plaintiffs-Appellants and Cross-Appellees, v. GENEVA TERRACE ESTATES HOMEOWNERS ASSOCIATION, f/k/a Lincoln Park Commons Homeowners Association, BRIAN C. MILLER, HOWARD KELLY, and MICHAEL UNETICH, Defendants-Appellees and Cross-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0269 |
| Filed | June 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute as to whether the home plaintiffs planned to construct in a planned development encroached on a driveway easement, the trial court properly entered summary judgment for plaintiffs finding that no easement existed, since the absence of any reference to an easement in any official documents or the planned development ordinance gave sufficient support to the trial court's finding, but summary judgment was also properly entered for defendant homeowners association and its board on the claim that defendants breached their fiduciary duties when they failed to inform plaintiffs that defendants would not pursue legal action against plaintiffs and caused plaintiffs to spend $150,000 filling the excavation site for the house they had started building, because plaintiffs failed to establish that their damages were proximately caused by the lack of notice from defendants and there was no question of material fact as to bad faith that would negate the protections of the business judgment rule or the advice-of-counsel defense. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-5133; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael O'Rourke, Andrew Levine, and Lawrence A. Rosen, all of O'Rourke & Moody, of Chicago, for appellants. |
| | Diane J. Silverberg, of Kovitz Shifrin Nesbit, of Buffalo Grove, for appellees. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Neville and Pucinski concurred in the judgment and opinion. |

## OPINION

¶ 1    The central issue that lies between the parties is whether a driveway easement actually exists or not.

¶ 2    Plaintiffs, Marc Feliciano and Carolyn Pleyto-Feliciano, bought a vacant lot in Geneva Terrace Estates, a planned development in Chicago's Lincoln Park neighborhood. The City of Chicago's department of planning and development approved their plans to build a three-story, single-family home on the lot and issued a building permit. Shortly after construction began, the defendants, the Geneva Terrace Estates Homeowners Association (association) and the association's board, threatened litigation if plaintiffs proceeded with construction before determining whether the planned home encroached on a purported driveway easement between plaintiffs' lot and the adjoining lot. Plaintiffs halted construction and filled in the excavation site. They then filed a complaint seeking a declaratory judgment that there was no enforceable driveway easement between the two lots. Plaintiffs also alleged the individual defendants breached their fiduciary duties as board members and sought a declaration prohibiting the association from indemnifying them.

¶ 3    The trial court granted plaintiffs' summary judgment motion, concluding that no driveway easement had been created, and granted defendants' summary judgment motion on the breach of fiduciary duties and indemnification allegations. Plaintiffs appeal the summary judgment order in favor of defendants on the breach of fiduciary duty allegations and also contend the trial court erred in denying them leave to file a second amended complaint. In response, defendants want us to affirm the order as to the breach of fiduciary duty claims and

on cross-appeal assert that if this court reverses on those counts, we should also reverse the summary judgment order in plaintiffs' favor on count I. We affirm the trial court's orders.

¶ 4                                    BACKGROUND

¶ 5     Marc Feliciano and Carolyn Pleyto-Feliciano are co-owners of real property located at 624 W. Drummond Place in Chicago, Illinois, which is designated as lot 4 in Geneva Terrace Estates, created under Chicago's planned development 737. The defendants are Geneva Terrace Estates Homeowners Association, Brian Miller, president of the association and a member of the association's board, and fellow board members, Howard Kelly and Michael Unetich. (Jan and Pam Henrich own a home on lot 5 in Geneva Terrace Estates, adjacent to plaintiffs' lot and were initially named as defendants but were later dismissed.)

¶ 6     Plaintiffs bought lot 4 in August 2010. The previous April, defendant Brian Miller, who owns lot 6, the adjacent lot to the north of lots 4 and 5, spoke with the Felicianos about jointly purchasing lot 5 so both parties could have more property for a yard or a garage. Those negotiations eventually broke down and the Felicianos purchased lot 4 only, while lot 5 was sold to the Henrichs, who built a single-family home on the property.

¶ 7     In September 2010, plaintiffs submitted building plans to the City of Chicago's department of planning and development for a three-story, single-family home they intended to build on the property. The plans called for a side setback of at least five feet from the Henrichs' house, as required by the planned development documents, but did not call for a private driveway between the two lots. Plaintiffs contended that neither the planned development documents nor the association's declaration of easements, covenants and restrictions (declaration), including the plat of subdivision, showed a driveway easement between lots 4 and 5. On September 24, 2010, the department of planning and development approved the plans and issued an "Interim Stage Part II Project Summary," stating that the plans "conform[ed] to the Plan of Development and/or Lakefront Ordinance." On February 1, 2011, Chicago's department of buildings issued a building permit to the Felicianos.

¶ 8     In November 2010, Miller successfully ran for a position on the association's three-person board. He stated he was asked to run for the position by an outgoing board member, who told him the board was short of members. On February 7, 2011, Miller, on behalf of the board, sent an email to Marc Feliciano asking him to submit his building plans to the board for approval under section 5.4(a) of the association's declaration, which provides:

> "At least thirty (30) days prior to the intended commencement of any construction of Initial Improvements upon a Residential Lot, except for Initial Improvements constructed or placed on any Residential Lot by the Declarant, the Owner of such Residential Lot shall submit the preliminary Plans and Specifications for any proposed Initial Improvements to the Declarant together with such other information as the Declarant may reasonably require in order to determine compliance with the Building Guidelines."

¶ 9     The building guidelines address mostly aesthetic requirements, and no one disputes that plaintiffs' plans satisfied those requirements. There was a question, however, as to whether a driveway easement ran between the Felicianos' lot and the Henrichs' lot that would preclude the Felicianos from constructing their home in accord with their building plans, because it

would encroach on the purported easement. Although plaintiffs argued the city's approval of their plans and the issuance of a building permit was evidence no easement existed, Miller contended the property designated as planned development 737 under the Chicago zoning ordinance (see Chicago Municipal Code § 17-8-0100 *et seq.* (2006)) showed the easement. He also contended that when he purchased his home on lot 6, the developer told him of a driveway easement between lots 4 and 5 but agreed to pay him $50,000 if it was later determined no easement existed. Miller informed the association's attorney that he likely had a conflict of interest based on his property being adjacent to plaintiffs' property and benefiting from the purported easement. The attorney advised Miller to recuse himself from voting on issues concerning the easement.

¶ 10 In April 2011, plaintiffs began construction on their home. A short time later, on April 23, the association, through its attorney, sent a letter to plaintiffs' attorney stating:

> "As you should be aware, your client has begun to dig to construct the foundation of home [*sic*]. In doing so, our client is of the belief, that your client is encroaching on the driveway easement. In the event your client is encroaching on the driveway easement, the Board will require your client to cease construction until this matter has been resolved.
>
> Please provide documentation to our office not later than Monday, April 25, 2011, at 5 PM substantiating that your client is not encroaching on the driveway easement. If you fail to provide such documentation, we will advise our client to proceed with a temporary restraining order."

¶ 11 Sometime after receiving the April 23 letter, plaintiffs halted construction and filled in the excavation site, at a purported cost of more than $150,000.

¶ 12 To resolve the easement issue, the plan development documents were submitted for interpretation to the city's department of economic planning. On May 6, 2012, Heather Gleason, assistant commissioner for the department of housing and economic development, sent this email, which was forwarded to the defendants:

> "We have reviewed all our [planned development] documents and found no official record of an easement of any kind. The drawing that was shown to me listing an easement is not an official part of this [planned development] and we have no idea where it came from, but again it is not official. We pulled all of the documents from long term storage, reviewed the drawings and again found no notation on any city documents regarding an easement. To be clear, unless there was an easement requested by the City, we could not enforce an easement negotiated between private parties and in fact, would not be aware that such an easement existed."

¶ 13 After receiving the email, board members Kelly and Unetich voted not to enforce the easement or take legal action against plaintiffs. They stated this decision was based on legal advice from their attorney that the easement did not exist. Neither the board nor the association's attorney advised plaintiffs of this decision before plaintiffs took the preemptive step of filling in the excavation site.

¶ 14 On May 18, 2011, plaintiffs filed a complaint against defendants, later amended on November 18, 2011, alleging that although their building plans complied with the city's requirements for erecting a three-story, single-family residence and the association's building guidelines, the board erroneously informed them their plans violated a driveway easement

and threatened litigation if they proceeded with construction. Plaintiffs contended defendant Miller improperly influenced the board and was motivated by self-interest because a driveway easement between lots 4 and 5 would provide more light and air, and less density, to the rear of his home and would increase his property's value.

¶ 15 In count I, plaintiffs sought a declaratory judgment that (i) no driveway easement exists between lots 4 and 5, (ii) construction of a single-family residence does not violate any city ordinance or the association's declaration, (iii) the plaintiffs are not in violation of the setback provisions of the planned development, and (iv) the association is not entitled to any injunctive relief that would prevent the plaintiffs from proceeding with construction. Count II alleged a breach of fiduciary duty against Miller, claiming he encouraged the association to oppose construction and acted in his own best interest and not the interest of the association. Count III alleged breach of fiduciary duty by board members Kelly and Unetich in helping Miller prevent them from building their residence despite knowing there was no easement between lots 4 and 5. Count IV alleged aiding and abetting a breach of fiduciary duty against Kelly and Unetich. (In counts II, III, and IV, plaintiffs sought $250,000, plus costs, interests, and punitive damages.) Count V sought a declaratory judgment that under the association's declaration, the association was prohibited from indemnifying defendants for fees or costs incurred in the lawsuit.

¶ 16 On February 10, 2012, plaintiffs filed a motion for summary judgment under section 2-1005 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2012)) on count I. In the motion, which was supported by an affidavit from Marc Feliciano, plaintiffs argued the association's declaration did not show or reference an easement between lots 4 and 5, and thus, no easement existed and the association did not have standing to halt construction. Further, plaintiffs contended their building plans complied with the planned development document and as evidenced by the email from Heather Gleason of the city's planning department, no legally fashioned easement existed. Plaintiffs also argued the association waived its rights to enforce the purported easement by allowing the Henrichs to build their home in disregard of the easement.

¶ 17 Defendants, in addition to a response, filed a cross-motion for summary judgment on the remainder of the complaint. As to count I, defendants argued plaintiffs' motion relied on inadmissible hearsay evidence, namely Marc Feliciano's affidavit, which defendants wanted stricken and disregarded by the court. Defendants also asserted the planned development document they produced showed an easement between lots 4 and 5, the association was vested with discretion to interpret its own governing documents, and thus, the court should defer to the board's interpretation rather than the city's or the plaintiffs' interpretation. The defendants further contended they had not waived their rights against the Felicianos because the association advised the Henrichs of the pending litigation over the easement, warned them they proceeded with construction at their peril, and sought to make them a necessary party in this litigation.

¶ 18 As to counts II through IV, defendants contended they were immune from liability for the alleged breaches of fiduciary duties because they were acting in good faith on advice of counsel. They also argued that the business judgment rule shielded them from liability absent a showing of bad faith, abuse of discretion, or negligence and that the exculpatory clause of the association's declarations barred liability for board members.

¶ 19 In reply, plaintiffs argued the defendants acted in bad faith and thus could not rely on the business judgment rule, the advice-of-counsel defense, or the exculpatory clause of the declarations. In addition to allegations that Miller acted in bad faith by participating in decisions about the easement despite his conflict of interest, plaintiffs alleged, for the first time, that defendants acted in bad faith by failing to inform them of the board's decision not to pursue legal action, a material fact, particularly in light of the earlier April 23 cease and desist letter.

¶ 20 The trial court granted plaintiffs leave to seek additional discovery as to counts II through V, and on May 9, 2012, ruled on the cross-motions for summary judgment on count I only. The trial court, which carefully sifted through the submissions and arguments, first addressed the threshold waiver and hearsay arguments. The court found defendants did not waive the right to enforce the easement by permitting the Henrichs to build their home in violation of the purported easement because defendants advised the Henrichs construction of their house was at their own risk. The court also rejected defendants' hearsay argument, finding that most of the evidence plaintiffs relied on were public records such as the planned development 737 document, the building permit, and an email from Heather Gleason, a city employee, and that other evidence came under the admissions of a party opponent exception to the hearsay rule. The court agreed that parts of Marc Feliciano's affidavit constituted hearsay, particularly those sections regarding conversations he had with employees of the city's department of planning and development, but ignored that evidence as well as other inadmissible evidence, in reaching its decision.

¶ 21 In granting plaintiffs' motion for summary judgment on count I, the court acknowledged that planned development 737 approved by the Chicago city council on March 15, 2000, appeared to show an easement between lots 4 and 5, but noted the association's 2002 declaration did not. Because the declaration is the more comprehensive document and filed at a later date, the court found it controlling in the event of a conflict. Article II of the association's declaration lists and describes all existing and possible future easements within Geneva Terrace and does not mention an easement between the two lots. Further, the declaration contains a plat of subdivision that depicts all easements within Geneva Terrace and does not show an easement between lots 4 and 5. More importantly, the court observed, city officials tasked with determining which documents are controlling declared there was no easement.

¶ 22 The court rejected defendants' other arguments, including their assertion that section 5.4(a) of the declaration grants the association authority to review and approve plans for new construction and that plaintiffs had unclean hands based on their knowledge about a potential easement between lots 4 and 5. The court found section 5.4(a) of the declaration gives the association authority to review building plans to ensure they comport with the building guidelines, which describe primarily aesthetic requirements and do not mention easements. The court also found plaintiffs' beliefs about a possible easement before confirmation by the city's planning department that no easement existed was irrelevant and was not evidence of unclean hands. The trial court concluded, "There is simply no reading of the [association's] governing documents that allows it to impose an easement where none exists ***."

¶ 23 On December 20, 2012, the trial court issued an order granting defendants' cross-motion for summary judgment as to the remainder of plaintiffs' complaint. The trial court found defendants were immune from liability on counts II through IV because they were acting in

good faith on the advice of counsel. The court rejected plaintiffs' contention that defendants acted in bad faith or with willful malfeasance. The court acknowledged Miller had a personal interest in the driveway easement because he owned the only home with a view and openness to light that would be affected by plaintiffs' house. The evidence of bad faith relied on by plaintiffs included Miller's proposal that he and the Felicianos purchase lot 5 together and his decision to run for a position on the board after negotiations to purchase lot 5 broke down. Plaintiffs contended that despite his personal interest in the outcome of the dispute, Miller stayed involved in the dispute as a board member and the other defendants, Kelly and Unetich, acquiesced in his involvement despite knowing about his personal interest in the outcome.

¶ 24    The court rejected these arguments and found that defendants' reliance on advice from their attorney protected them from liability for breach of fiduciary duty. The court stated, "It is abundantly clear throughout the record, including all of the evidence Plaintiffs cite in their opposition brief, that Miller, Kelly and Unetich were in regular communication with counsel throughout this dispute, and that their belief that the driveway easement was enforceable was grounded in such legal advice. It is also clear that there were legitimate legal arguments to be made in support of the existence of the easement. Advertising materials concerning the development included the easement, as did earlier plans. Plaintiffs themselves seem to have operated under the mistaken belief that an easement existed, before learning otherwise. It is clear to this Court, having rendered a decision previously determining that the easement does not exist, that this was a bona-fide controversy with arguments to be made on both sides." While acknowledging that good faith is often an issue of fact, the court found that in the complete absence of evidence of bad faith, the court may grant summary judgment.

¶ 25    The court also found the defendants were shielded from liability under the business judgment rule and by the declaration's exculpation provision, which provides that members of the association "shall not be liable to the Owners *** for any mistake of judgment or for any acts or omissions of any nature whatsoever in their respective positions which shall occur *** except for such acts or omissions found by a court of competent jurisdiction to constitute willful malfeasance, gross negligence or fraud."

¶ 26    The court rejected plaintiffs' argument that defendants breached a fiduciary duty to advise them of the decision not to pursue legal action against them and that this failure caused them to needlessly spend more than $150,000 in filling in the excavation site. The court stated that it was unclear that the lack of notification by defendants caused plaintiffs to fill in the foundation because there was no evidence as to when or why they decided to do so without first trying to communicate with the board. Also, no evidence was presented about when plaintiffs learned about the Gleason email, which might have put them on notice that the association's position had changed. The court stated the neighborly and professional course of action would have been to inform plaintiffs' lawyer that the board would not be proceeding with litigation but failing to do so did not constitute a breach of fiduciary duty for three reasons. First, the board had no duty to communicate this information to plaintiffs or to do so within any particular time frame. Second, even if the board had a duty, the individual defendants are shielded from liability because they were following the advice of counsel. And third, Miller fully disclosed his personal interest in the dispute and acted in accordance with advice from his attorney. (As to count V, which is not a part of this appeal, the trial

court found that defendants did not engage in willful malfeasance, gross negligence, or fraud, and therefore are entitled to indemnification.)

¶ 27    On December 21, 2012, the trial court denied plaintiffs' motion for leave to file a second amended complaint as untimely, and, in addition, would not cure the defects in the first amended complaint for the reasons stated in court. The court also found section 108.60 of the General Not For Profit Corporation Act of 1986 (805 ILCS 105/108.60 (West 2012)), cited by plaintiffs in their amended complaint, does not give rise to a cause of action for breach of fiduciary duty.

¶ 28    On January 11, 2013, plaintiffs filed a petition for leave to appeal the trial court's December 20, 2012 order granting summary judgment in favor of defendants as to counts II through IV and its December 21, 2012, order denying their motion to file a second amended complaint. On January 22, 2013, defendants filed a notice of cross-appeal.

¶ 29                                    ANALYSIS

¶ 30    A trial court order granting summary judgment presents a question of law, which we review *de novo*. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 462 (2003). A court should grant a motion for summary judgment only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). In deciding a motion for summary judgment, the court must not try a question of fact but, rather, determine whether one exists or if reasonable persons could draw different inferences from the undisputed facts. *Golden Rule Insurance Co.*, 203 Ill. 2d at 462. The court must construe the pleadings, depositions, admissions and affidavits strictly against the moving party and liberally in favor of the respondent. *Gauthier v. Westfall*, 266 Ill. App. 3d 213, 219 (1994). "When parties file cross-motions for summary judgment, the court is invited to decide the issue on summary judgment as a matter of law; however, summary judgment is nevertheless inappropriate if factual questions regarding a material issue exist." *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334 (2005) (citing *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 306 (1994)).

¶ 31                          Breach of Fiduciary Duty

¶ 32    Plaintiffs contend the trial court erred in granting summary judgment on counts II through IV because the defendants breached their fiduciary duties by not informing plaintiffs that the board would not be pursuing legal action against them, which resulted in at least $150,000 in damages to fill in the excavation site. Plaintiffs assert the trial court improperly relied on the advice-of-counsel defense in granting defendants' cross motion for summary judgment in that (i) the record shows defendants did not receive legal advice on this issue and (ii) even if they did, they acted in bad faith, which trumps the defense, as well as the other defenses relied on by the trial court–the business judgment rule and the exculpatory clause of the declarations.

¶ 33    As a preliminary matter, we address defendants' contention that this court should affirm the summary judgment order on counts II through IV because plaintiffs' first amended complaint failed to allege breach of fiduciary duty based on defendants' failure to inform them that they would not be sued. According to defendants, plaintiffs first raised this theory

of liability in their memorandum in opposition to defendants' motion for summary judgment and thereby forfeited the argument. For support, defendants rely on *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905 (1994). In *Pagano*, the plaintiff filed a negligence suit, alleging various theories of recovery, for injuries he suffered in a fall from his truck bed while loading barrels of ink on the defendants' premises. The trial court entered summary judgment in the defendants' favor. *Id.* at 907-08. On appeal, the plaintiff argued for the first time a theory of premises liability in that the dock plate was slippery from an accumulation of snow. *Id.* at 910-11. The appellate court rejected the premises liability argument, noting: (i) the plaintiff failed to include that theory in his complaint, (ii) the plaintiff failed to raise the theory at any stage of the proceedings before the trial court, and (iii) forfeiture aside, the argument failed on the merits. *Id.* at 911. In discussing its first basis for rejecting the argument, the court noted that "the plaintiff will not be heard to complain that summary judgment was inappropriately granted because of the existence of evidence supporting a theory of recovery that he never pled in his complaint." *Id.*

¶ 34    In *Pagano*, the plaintiff presented an entirely new theory raised for the first time on appeal. Here, in their first amended complaint, the plaintiffs did allege defendants breached their fiduciary duties as members of the board. Later, they added this additional basis for alleging a breach of fiduciary duty and did not add a whole new theory of liability. Further, defendants do not allege they were surprised by the additional basis for alleging breach of fiduciary duty. See *Gold Realty Group Corp. v. Kismet Café, Inc.*, 358 Ill. App. 3d 675 (2005) (summary judgment in plaintiff's favor reversed where plaintiff abandoned initial theory of liability and asserted completely new theory, noting defendants' surprise at new issue). Thus, plaintiffs have not forfeited the issue, and we address its merits.

¶ 35    To state a cause of action for breach of a fiduciary duty, a plaintiff must allege and ultimately prove: (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 53 (1994). The individual members of the board of managers of a condominium association owe a fiduciary duty to the unit owners. 765 ILCS 605/18.4 (West 2012); *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 454 (1997). This fiduciary duty requires board members to act in a manner reasonably related to the exercise of that duty, and the failure to do so results in liability for the board and its individual members. *Carney v. Donley*, 261 Ill. App. 3d 1002, 1011 (1994) (citing *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 533-34 (1983)).

¶ 36    Plaintiffs failed to present sufficient facts for a finding that defendants breached their fiduciary duties or that the breach was the proximate cause of their damages. Plaintiffs assert the board's decision not to pursue legal action against them was a material fact defendants were obligated to disclose, particularly after sending them a letter threatening litigation if they did not halt construction. Plaintiffs contend that after they did receive the April 23 letter, they ceased construction of their home and filled in the excavation site at a cost of at least $150,000. But even if defendants had a duty to inform plaintiffs of the board's decision and inform them within a certain time frame, plaintiffs do not present sufficient evidence showing the absence of notification was the proximate cause of their damages.

¶ 37    Generally, proximate cause is an issue of material fact to be determined by the trier of fact. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). But proximate cause may be

determined as a matter of law where the facts show that the plaintiff would never be entitled to recover. *Id*. at 257-58. Proximate cause consists of two requirements: cause in fact and legal cause. *Id.* at 258. "A defendant's conduct is a 'cause in fact' of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury." *Id.* If the plaintiff's injury would not have occurred absent the defendant's conduct, then the conduct is a material element and substantial factor in bringing the injury. *Id.* On the other hand, "legal cause" is based largely on foreseeability and the court must consider whether the injury is of the type that a reasonable person would see as a likely result of his conduct. *Id.* If a defendant's conduct does nothing other than furnish a condition by which the injury is made possible, and the condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Id.* at 259.

¶ 38    The April 23 letter asked for documentation that the home under construction was not encroaching on the purported driveway easement and stated, "In the event your client is encroaching on the driveway easement, the Board will require your client to cease construction until this matter has been resolved." The letter did not advise plaintiffs they must fill in the excavation site, but simply stated that *in the event* plaintiffs failed to present documentation showing no easement existed, the board would seek to cease construction until the matter was resolved. Shortly after receiving this letter, plaintiffs filed a lawsuit against defendants and filled in the excavation site at significant expense. Based on the contents of the April 23 letter, however, defendants could not have reasonably foreseen plaintiffs would fill in the excavation site or that they would do so as quickly as they did without first trying to determine if the matter could be resolved. Although defendants may have had a duty to advise plaintiffs the board decided against taking legal action at some point after receiving the May 6 letter from Heather Gleason, plaintiffs failed to present sufficient evidence showing the lack of notification by defendants caused plaintiffs to incur the $150,000 expense of filling in the excavation site. No evidence indicated when or why they decided to take that step.

¶ 39    Plaintiffs next contend the trial court erred in granting summary judgment because defendants acted in bad faith, which precludes them from relying on the advice-of-counsel defense, the business judgment rule, or the exculpatory clause of the declaration. Under the business judgment rule, " '[a]bsent evidence of bad faith, fraud, illegality, or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors.' " *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 63 (quoting *Fields v. Sax*, 123 Ill. App. 3d 460, 467 (1984)). The rule protects directors who have been careful and diligent in performing their duties from being subjected to liability for honest mistakes of judgment. *Id*. But if board members have failed to exercise due care, they may not use the business judgment rule as a shield for their conduct. *Id*. A component of due care involves directors informing themselves of material facts necessary to properly exercise their business judgment. *Id*. ¶ 64. "To that end, if a board seeks legal advice before reaching its decision and relied on that advice in reaching its decision, it will be found to have properly exercised its business judgment." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 112.

¶ 40    Plaintiffs contend they presented sufficient evidence that Miller "acted in bad faith from the outset" to create a material question of fact as to whether he should be permitted to avail

himself of the advice-of-counsel defense, the business judgment rule or the exculpatory clause. Plaintiffs' evidence of Miller's bad faith includes his proposal to plaintiffs in April 2010 that they purchase lot 5 together for use jointly as a yard, which was abandoned when the parties could not reach an agreement and his decision in November 2010 to run for the board shortly after the negotiations with plaintiffs failed. Plaintiffs contend Miller's sole motivation for wanting to join the board was preventing plaintiffs from building their home that would block his view. And, once on the board, he hired a lawyer to shield him from bad-faith allegations. All of these allegations are conjecture. Miller acknowledges he approached plaintiffs about jointly buying lot 5 and said that once a bidder who wanted to build a home on the lot entered the picture, the price became too high and they dropped the plan. Although plaintiffs suggest his decision to run for the board shortly after raises questions about his motives, the record shows Miller was asked to run by a former board member looking for someone to step forward. Further, contrary to plaintiffs' assertion, the board hired its attorney before Miller's election to the board. None of this evidence creates a material fact of bad faith that would deprive defendants of the protections of the declaration's exculpatory clause of the business judgment rule, or the advice-of-counsel defense. Thus, the trial court did not err in granting defendants' motion for summary judgment as to counts II through IV of plaintiffs' complaint.

¶ 41                    Motion to File Second Amended Complaint

¶ 42     Plaintiffs next contend the trial court erred in denying their motion to file a second amended complaint. Plaintiffs assert that during the deposition of defendants' attorney they became aware that defendant Kelly did not participate in the decision to send the April 23 cease and desist letter. Thus, either Miller, who was disqualified from voting on issues concerning the easement because of his conflict of interest, improperly voted or the board only had one vote, defendant Unetich's, in favor of sending the letter. Plaintiffs contend that under section 8.3(g) of the association's declaration, the board "shall act by majority vote of those present at its meeting when a quorum exists" and because only one board member was present to vote, sending the letter was beyond the association's powers. Alternatively, plaintiffs assert, if Miller did participate in the decision to send the letter, this constituted further evidence of bad faith and they should have been permitted to amend their complaint to add this allegation.

¶ 43     As a preliminary matter, we first address defendants' contention that this court should affirm the trial court because plaintiffs have failed to present a complete record on appeal. Specifically, defendants assert that although plaintiffs provided courtesy copies of the motion to amend to them and the trial court, plaintiffs never filed the motion with the court, and thus it is not part of the record on appeal. Citing *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984), defendants assert that when a motion is not part of the record on appeal, the appellate court cannot consider the issue and must affirm. In *Foutch*, the supreme court addressed whether there is a "sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch*, 99 Ill. 2d at 391-92. The sufficiency of the record to address a claim of error turns on the question presented on appeal. In *Foutch*, the question was whether the trial court abused its discretion in denying the motion to vacate an *ex parte* judgment. *Id*. Absent a transcript of the hearing below where evidence was heard, review for an abuse of discretion of the trial court's denial of the motion, where no specific grounds for the denial were given, was

foreclosed. *Id*. at 392. Here, plaintiffs have provided a copy of the motion in their reply brief and the trial court's order denying the motion and parties' briefs provide a sufficiently complete record for us to address its merits.

¶ 44    The Code of Civil Procedure states:

"At any time before final judgment amendments may be allowed on just and reasonable terms *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2012).

¶ 45    Moreover, under the Code, "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." 735 ILCS 5/2-616(c) (West 2012). Courts look at four factors in determining whether to permit amended pleadings under section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2012)). See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). First, whether the proposed amendment would cure a defective pleading. Second, whether the proposed amendment would surprise or prejudice the opposing party. Third, whether the proposed amendment was timely filed. And fourth, whether the moving party had previous opportunities to amend. *Id*. The most important of these factors is the prejudice to the opposing party, as where an amendment leaves the party unprepared to respond to a new theory at trial. *Paschen Contractors, Inc. v. City of Kankakee*, 353 Ill. App. 3d 628, 638 (2004). The right to amend a complaint or countercomplaint is not absolute, but is a matter within the trial court's discretion. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 748 (2009). Accordingly, we will not reverse the trial court's decision absent an abuse of discretion. *Id*.

¶ 46    Plaintiffs have not established that the trial court abused its discretion in denying their request to file a second amended complaint. The record does not support their argument that the board held a meeting at which a vote was taken to send the letter. At his deposition, the association's attorney said "It wasn't a meeting. It was just a *** conference call." And that he "wouldn't necessarily classify it as a vote" but more of an "acknowledgment [by board members] that the letter was okay to send." More significantly, amending the complaint to add these allegations would not have cured the defect. The business judgment rule, the advice-of-counsel defense, and the declaration's exculpatory clause would also protect defendants from liability for improper board action, as there was no evidence showing defendants acted with willful malfeasance, gross negligence, or fraud or that they were not acting on the advice of counsel. Thus, the trial court did not err in denying plaintiffs' motion to file a second amended complaint.

¶ 47                                    Easement

¶ 48    On cross-appeal, defendants ask us to reverse summary judgment as to count I, if we reverse the summary judgment as to counts II through IV. Although we are affirming as to those counts, for the sake of completeness, we will address the defendants' arguments seeking reversal. Defendants primarily contend that the trial court improperly relied on hearsay evidence in granting plaintiffs' summary judgment motion on count I. The primary evidence cited by the trial court in granting the motion was the association declarations and

the planned development 737 document. The declarations, filed in January 2002, include an extensive description of easements in Geneva Terrace Estates but do not mention a driveway easement between lots 4 and 5. The ordinance, passed by the city council in 2000, has no specific section creating or describing any easements in the planned development. Section 2 states that "Any *** easements shall require a separate submittal on behalf of the applicant *** and approval of the City Council." Defendants do not allege any "separate submittal" creating the easement was filed or passed by the city council.

¶ 49    The site plan in the planned development ordinance arguably suggests an easement between lots 4 and 5. It shows a space between those two lots that appears to be a driveway, although it is not labeled as one. But, given the absence of any other evidence of a driveway easement in the later filed declarations and the provision in the planned development ordinance, the trial court did not err in finding that there was no question of fact about the existence of an easement between lots 4 and 5.

¶ 50    As to defendants' hearsay argument, they contend the trial court improperly relied on hearsay statements that do not fall into any exception–the exhibits to Marc Feliciano's affidavit, including the Interim State Part II Project Summary, and the email from Heather Gleason. But, both documents were admissible as public records. Illinois Rule of Evidence 803(8) provides, in relevant part:

> "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> *** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report *** unless the sources of information or other circumstances indicate lack of trustworthiness." Ill. R. Evid. 803(8) (eff. Apr. 26, 2012).

¶ 51    The "Interim Stage Part II Project Summary" was prepared by the city's department of planning and development after plaintiffs' submitted their building plans for approval. Nothing in this document suggests a lack of trustworthiness. Similarly, Heather Gleason's email responded to a request from the parties about the existence of the purported easement. She stated that she reviewed all of the department's planned development documents and found no official record of an easement of any kind. Again, this document reports on the activities of the office in answering the parties' inquiry. Moreover, absent those documents, the association's declarations and the planned development ordinance were sufficient bases to support the trial court's finding that no easement existed. Thus, the trial court did not err in granting summary judgment as to count I.

¶ 52                                    CONCLUSION

¶ 53    Affirmed.