**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240277-U

Order filed October 15, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| KATIE KAI; BAOHUA XUE; MILIN P.; PATEL; ARTI D. PATEL; MACIEJ LABOWICZ; EVA LABOWICZ; VSA PROPERTIES, LLC; EVERYOUNG, LLC-SERIES 1; EVERYOUNG, LLC-SERIES 2; EVERYOUNG, LLC-SERIES 3; EVERYOUNG, LLC-SERIES 4; EVERYOUNG, LLC-SERIES 5; EVERYOUNG, LLC-SERIES 6; EVERYOUNG, LLC-SERIES 7; NEWPORT HOMES PENSION PLAN; MITUL RAO; NISHABEN RAO; HEMAL RAO; SHITAL RAO; DAVID YU; JANE LEE; CHARLENE M. ROMBERG REVOCABLE LIVING TRUST; DENNIS KRULL; RENATA MAJEWSKI; GRAZYNA KIELCZESKA; BRIAN PRZYBYLSKI; BOGUSLAW PRZYBYLSKI; and MAUREEN JORDAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Appeal No. 3-24-0277 Circuit No. 18-CH-960 |
| BOARD OF DIRECTORS OF SPRING HILL BUILDING 1 CONDOMINIUM ASSOCIATION, INC.; BOARD OF DIRECTORS OF SPRING HILL BUILDING 4 CONDOMINIUM ASSOCIATION, INC.; | ) ) ) ) ) ) | |

BOARD OF DIRECTORS OF SPRING HILL )
BUILDING 5 CONDOMINIUM )
ASSOCIATION, INC.; BOARD OF )
DIRECTORS OF SPRING HILL BUILDING )
6 CONDOMINIUM ASSOCIATION, INC.; )
SPRING HILL CONDOMINIUMS MASTER )
ASSOCIATION, INC.; MOSAIC )
SPRINGHILL, LLC.; DAVID I. DRESDNER; )
SHERWOOD E. BLITSTEIN; RICHARD )
BLATT; and MOSAIC BEVERLY FMC, LLC, )
)
     Defendants )
)
(Maureen Jordan, Plaintiff and Appellant; )
Board of Directors of Spring Hill Building 6 )
Condominium Association, Inc.; Spring Hill )
Condominiums Master Association, Inc.; )
David I. Dresdner; Sherwood E. Blitstein; )
Richard Blatt; Mosaic Beverly FMC, LLC; )    Honorable
and Mosaic Spring Hill LLC, Defendants and )    Anne T. Hayes,
Appellees). )    Judge, Presiding.

_____

     PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
     Justice Holdridge concurred in the judgment.
     Justice Anderson dissented.

_____

**ORDER**

¶ 1      *Held*:  We affirm the circuit court's order granting summary judgment in defendants'
           favor on plaintiff's claims for breach of fiduciary duty, fraud, and civil
           conspiracy. Affirmed.

¶ 2      This case involves the forced bulk sale of condominium units pursuant to section 15 of

the Illinois Condominium Property Act (Act) (765 ILCS 605/15 (West 2018)). Several individual

unit owners initiated this lawsuit in 2018 against board members of the condominium

associations and companies that the board members own. This is the fourth appeal in this case.

The first two appeals were dismissed on procedural grounds.

¶ 3    In the third appeal, the sole remaining plaintiff—Maureen Jordan—contested the dismissal with prejudice of her claims for breach of fiduciary duty, fraud, civil conspiracy, and rescission against defendants—Board of Directors of Spring Hill Building 6 Condominium Association, Inc. (building 6 association); Spring Hill Condominiums Master Association, Inc.; David I. Dresdner; Sherwood E. Blitstein; Richard Blatt; Mosaic Beverly FMC, LLC; and Mosaic Spring Hill, LLC. Dresdner and Blitstein were the president and vice president of the building 6 association, respectively, and the sole members and managers of Mosaic Beverly and Mosaic Spring Hill. The appellate court affirmed the dismissal of the rescission claim but reversed the dismissal as to the remaining claims and remanded for further proceedings. See *Kai v. Board of Directors of Spring Hill Building 1 Condominium Ass'n*, 2020 IL App (2d) 190642. On remand, the circuit court granted summary judgment on all claims in favor of defendants and against plaintiff. Plaintiff timely appealed. For the reasons set forth below, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5    We set forth the language of section 15 of the Act and the relevant factual and procedural history.

¶ 6                                    A. Section 15

¶ 7    Section 15(a) of the Act provides that, if a sufficient majority of the unit owners in an association (here, not less than 75%) votes in favor of a bulk sale "by affirmative vote at a meeting of unit owners duly called for such purpose ***," the action is binding on all unit owners. 765 ILCS 605/15(a) (West 2018). However, section 15(a) further provides:

    "[A]ny unit owner who did not vote in favor of such action and who has filed
    written objection thereto with the manager or board of managers within 20 days after the
    date of the meeting at which such sale was approved shall be entitled to receive from the

3

proceeds of such sale an amount equivalent to the greater of: (i) the value of his or her interest, as determined by a fair appraisal, less the amount of any unpaid assessments or charges due and owing from such unit owner or (ii) the outstanding balance of any bona fide debt secured by the objecting unit owner's interest which was incurred by such unit owner in connection with the acquisition or refinance of the unit owner's interest, less the amount of any unpaid assessments or charges due and owing from such unit owner. The objecting unit owner is also entitled to receive from the proceeds of a sale under this Section reimbursement for reasonable relocation costs ***." *Id.*

¶ 8 If there is a disagreement as to the value of the interest of a unit owner who did not vote in favor of the sale, section 15(b) provides that unit owner may retain an appraiser who, along with the purchaser's appraiser, mutually select a third appraiser to form "a panel to determine by vote of at least 2 of the members of the panel, the value of that unit owner's interest in the property." *Id.* § 15(b).

¶ 9 B. Spring Hill Complex Section 15 Sale

¶ 10 The Spring Hill Condominium complex (Spring Hill complex), located in Roselle, contains 264 residential units separated into six buildings. Plaintiff owned two units in the Spring Hill complex, but only her one-bedroom unit in building 6 is at issue here. Plaintiff purchased the unit in building 6 in October 2010 at a foreclosure sale for approximately $32,000 (acquiring a 1.847535% ownership interest in building 6) and rented the unit to a tenant.

¶ 11 In July 2016, Mosaic Spring Hill purchased 213 units in the Spring Hill complex for $22.4 million, including 36 units in building 6. After the purchase, Mosaic Spring Hill owned a majority of the units in building 1, all units in buildings 2 and 3, and over 75% of the units in buildings 4, 5, and 6. Mosaic Spring Hill, through Mosaic Management Deerfield (also owned by

Dresdner and Blitstein) hired Blatt and managed the units as rental properties. Each building had a homeowners' association, and along with the master association, had its own five-person board of directors (board), three of whom were Dresdner, Blitstein, and Blatt. At all relevant times, Dresdner, Blitstein, and Blatt were three of the five members of the board for the building 6 association.

¶ 12    In October 2017, Mosaic Beverly offered to purchase all units in the Spring Hill complex pursuant to section 15 of the Act. On October 27, 2017, the building 6 association held a meeting regarding the offer, the minutes from which provided:

"Article 15 of the Illinois Condominium Property Act was discussed. The act is designed to allow for the re-assembly/de-conversion of 'broken' condominium buildings. For this purpose, appraisals have been ordered and conversations with brokers are occurring. In general, if 75% of unit owners vote to agree on the sale of the entire building, then all unit owners would be required to sell their units. If a Unit Owner thought the price was not fair, the unit owner can object and order an appraisal. Then, the Buyer's appraiser and the Unit Owner's appraiser, per IL Condo Code procedures, have a process to arrive at a price. Questions were raised concerning existing leases and owner occupants. Leases, as permitted by our Declaration, would remain in place, and not be cancelled due to the sale. Owner occupants would likely be welcomed to enter into leases. If an offer for the building is made, it will be presented and voted on at a Special meeting. Mosaic Springhill (an investor group) holds more than 75% of all buildings, except Building 1. As details emerge (such as appraisal information) such will be shared during the next Meeting on November 16, 2017."

¶ 13     The next set of meeting minutes to which the parties cite are those from the December 4, 2017, building 6 association meeting, which provided that the meeting's purpose was to "[d]iscuss Article 15 of the Illinois Condo Act and vote on whether the board should move forward to negotiate a contract for the sale of the Building." Dresdner, Blitstein, Blatt, and one other building 6 association board member voted in favor of doing so; one board member voted against.

¶ 14     On May 16, 2018, the building 6 association's attorney sent a letter to all unit owners, stating that the board was "in negotiations with Mosaic Springhill, LLC, the [pro]spective purchaser"; explaining the process involved in a section 15 sale; advising that the attorney represented the building 6 association, not the individual owners; and encouraging the owners to seek personal counsel. The record also includes a subsequent May 25, 2018, letter to the building 6 association, thanking the unit owners for participating in a survey to determine the method of spreading the offer price and advising that "[t]he majority of non-Mosaic owners in your building selected the Average Appraised Value method."

¶ 15     On June 26, 2018, the board sent unit owners notice of a July 9, 2018, meeting to vote on the bulk sale, an unexecuted copy of the proposed contract to sell building 6, a proxy form, answers to "Frequently Asked Questions" about the section 15 process, a unit owner's objection form, and an information letter. While the unexecuted copy of the proposed contract did not identify the buyer, the addendum to the contract identified the proposed buyer as Mosaic Beverly. Under the contract, the purchase price for building 6 was $4,062,780, and plaintiff would receive $83,475 for her unit.

¶ 16     On July 9, 2018, plaintiff voted against the bulk sale for building 6, as did the other former plaintiffs. However, Dresdner, on behalf of the 36 units owned by Mosaic Spring Hill,

6

voted in favor of the sale. His ballot attached a chart reflecting the units owned by Mosaic Spring Hill in building 6 and the units' respective ownership percentage, totaling 76.26%. Accordingly, in excess of the required 75% of unit owners voted to sell building 6 to Mosaic Beverly.

¶ 17 On July 19, 2018, and July 25, 2018, Dresdner e-mailed owners who voted against the sale (or who did not vote) to remind them of the 20-day deadline to object and explain the appraisal process. Pursuant to section 15(a), all former plaintiff unit owners timely filed written objections to the board and provided appraisals for their individual units. Jordan submitted neither an objection nor an appraisal. The appraiser designated by the former plaintiffs and the appraiser designated by Mosaic Spring Hill selected a third independent appraiser to form a panel pursuant to section 15(b), and the appraisal process ensued.

¶ 18 C. Procedural History

¶ 19 Meanwhile, on July 27, 2018, owners from various buildings filed suit against defendants (and the associations for their respective buildings). Plaintiff joined the suit when the first amended complaint was later filed. Subsequently, on October 4, 2018, a nine-count second amended complaint was filed; three of the counts (counts I, II, and IV) remain at issue in this appeal. Count I alleged a breach of fiduciary duty against Dresdner, Blitstein, and Blatt for failure to disclose that, while serving as board members, they also owned and worked for Mosaic Beverly. According to the complaint, the individual defendants engaged in self-dealing and acted in their own self-interest to the detriment of other unit owners by not seeking the highest and best value for each unit owner. Count II alleged fraud against Dresdner, Blitstein, and Blatt for misrepresenting to the unit owners that the sale was in the owners' best interests. Count IV alleged that defendants engaged in a civil conspiracy to acquire units and force a sale for less than fair market value.

7

¶ 20                                    1. Dismissal

¶ 21        Defendants moved to dismiss the second amended complaint pursuant to section 2-619 of

the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)), arguing that plaintiffs

could not assert a claim for breach of fiduciary duty (or the related claims for fraud and civil

conspiracy) because the procedure in section 15 of the Act was the sole remedy available to the

minority unit owners. Following briefing and argument, the circuit court agreed, granted the

motion, and dismissed the second amended complaint. However, the circuit court held the case

open to monitor defendants' compliance with the still-pending section 15 appraisal process. In

April 2019, the panel issued its report, valuing the one-bedroom units at either $105,000 or

$115,000, depending on condition. The former plaintiffs accepted the higher values for their

units, as determined by the panel. The sale of building 6 closed on August 30, 2019. Plaintiff

received $83,475 for her unit—her proportionate share of the purchase price in the sales contract.

On June 20, 2019, the circuit court entered a final order. Only plaintiff appealed.

¶ 22        The appellate court reversed the dismissals of counts I, II, and IV (and affirmed the

dismissal of a rescission claim no longer at issue) and remanded for further proceedings. *Kai*,

2020 IL App. (2d) 190642. In rejecting defendants' argument that section 15 of the Act provided

the sole remedy against misconduct during a forced bulk sale of condominiums regardless of

whether that misconduct also violated fiduciary duties, the court reasoned that section 15

expresses no legislative intent to alter the common law of fiduciary duties. *Id.* ¶ 19. Assuming

the truth of plaintiff's allegations (as was required given the procedural posture), the court

reasoned that the allegations regarding the defendant board members' dual interests as both the

majority unit owner Mosaic Spring Hill and the buyer Mosaic Beverly and their alleged use of

their control of the board to effectuate a bulk sale to a buyer it also controlled on terms that

8

disadvantaged plaintiff, if proven, could amount to a breach of defendants' fiduciary duties. *Id.* ¶ 26. The court concluded that the fraud and conspiracy claims were dependent on application of the law of fiduciary duty and thus reversed dismissal on those counts as well. *Id.* ¶¶ 17, 30.

¶ 23                                    2. Summary Judgment

¶ 24          On remand, defendants answered the second amended complaint and raised the following affirmative defenses: the doctrine of avoidable consequences, failure to mitigate damages, waiver, unclean hands, and laches. Discovery ensued. Plaintiff retained an appraiser, Aaron Mundie, who opined that in July 2018, the fair market value of building 6 was $6.8 million— more than the contract price of $4,062,780. Plaintiff's single unit in building 6 comprised 1.847535% of that building; thus, plaintiff calculated her damages (in addition to her request for punitive damages) as the difference between her share of the sale price—$83,475—and the proportionate value of her unit (based on her appraiser's valuation)—$125,632.38—resulting in actual damages of $42,157.38.

¶ 25          On February 10, 2023, defendants jointly moved for summary judgment, arguing that there was no evidence that defendant board members breached their fiduciary duty in connection with the sale or proximately caused plaintiff damages. Defendants also argued that, absent an underlying breach of fiduciary duty, plaintiff's fraud and conspiracy claims failed. Alternatively, defendants argued that they were entitled to summary judgment on their affirmative defenses given plaintiff's failure to object and submit an appraisal pursuant to section 15. In opposition, plaintiff argued that she had established that the board members' dual capacity had not been disclosed, there was a presumption of fraud given that board members are prohibited, under section 15, from acting against the unit owners' interests, and section 15 was not plaintiff's sole

9

remedy. Plaintiff asserted that her damages were based on a formula supported by her retained appraiser's valuation.

¶ 26 On March 22, 2024, following briefing, the circuit court entered an order granting defendants' joint motion for summary judgment. Initially, the court noted:

"While Plaintiff has frequently cited the rulings from the Second District's opinion, it is critical to remember that the analysis focused on whether Plaintiff had set forth sufficient facts which, if proven, could amount to a breach of fiduciary duty etc. In a motion to dismiss, unlike with a summary judgment motion, the court must take all well pleaded allegations as true and consider all reasonable inferences from said allegations."

¶ 27 Considering the evidence in the summary judgment context, the court first turned to the breach of fiduciary duty claim and noted there was no dispute that the individual defendants, as members of the board, owed a fiduciary duty to all unit owners. However, the court proceeded to reject the theories on which the purported breach of this fiduciary duty was based, including that defendants knew the buildings were worth more than the sales price based upon an appraisal that Mosaic Spring Hill obtained in 2016 when it purchased the 213 units in the Spring Hill complex. The court reasoned that defendants obtained this information as purchasers, not as board members, and that "[k]nowledge of what was paid for other units in a different market under different circumstances do[es] not speak to the value of [plaintiff's] unit in any specific or measurable way." Moreover, the court reasoned that defendants' alleged failure to disclose their role as buyers to the unit owners "was immaterial as information and disclosure of same would not have changed the outcome of the vote as all non-Mosaic unit owners voted against the sale."

¶ 28 After finding no genuine issue of material fact as to the breach element of a fiduciary duty claim, the court proceeded to address the damages and proximate cause elements. Namely,

10

the court found no evidence to support plaintiff's damages claims, including, *inter alia*, failure to receive fair market value for her unit and punitive damages. Rejecting plaintiff's reliance on Mundie's appraisal for her assertion that she failed to receive fair market value, the circuit court reasoned that Mundie appraised the entire building 6, not plaintiff's unit. In addition, defendants established that the value of plaintiff's unit was determined by utilizing the appraisal for building 1, which provided the highest unit values and became the base price upon which subsequent adjustments were made—the average appraised value for which the non-Mosaic unit owners voted. The court concluded that neither the Mundie appraisal nor the appraisal Mosaic Beverly obtained in 2016 when it purchased the units established a reasonably certain measure of plaintiff's alleged damages. Moreover, the court held that, given plaintiff's failure to establish actual damages, her punitive damages claims failed, and that, in any event, the evidence did not support punitive damages. Rather, defendants followed the statutory requirements for a section 15 sale, and unit owners were informed of the process and participated in the vote. In addition, unit owners were able to file objections and submit their own appraisals, thereby creating a panel that determined the units' values, and non-Mosaic unit owners determined how the funds were allocated to accommodate differences among the units.

¶ 29    As for proximate cause, the court found no evidence that plaintiff's damages were proximately caused by defendants' actions. Rather, "[i]t was ultimately [plaintiff's] failure to act under Section 15 that actually and proximately caused her damages. She has failed to establish she would have received a higher price on the market than if she followed the objection procedure under the Act and provided her own appraisal."

¶ 30    Turning to the fraud claim, the court initially noted that it was unclear whether plaintiff was asserting an actual fraud claim in addition to constructive fraud, but, regardless, found no

11

evidence in the record that defendants represented to plaintiff that the sale was in her best interests or recommended that plaintiff approve the bulk sale. The court also found no evidence that plaintiff relied on any such alleged statements. To the contrary, neither she nor any of the former plaintiffs voted in favor of the sale. Thus, there was no detrimental reliance on the alleged misrepresentations and no inducement to vote in favor of the sale. In turn, since all unit owners voted against the sale, the court found that there can be no damages resulting from reliance on the alleged statements.

¶ 31        Finally, noting that a civil conspiracy claim requires an underlying tort, and having concluded that defendants were entitled to summary judgment on the only tort claims, breach of fiduciary duty and fraud, the court entered summary judgment in defendants' favor on the conspiracy claim as well.

¶ 32        The court proceeded to address defendants' affirmative defenses, holding that the doctrine of avoidable consequences and plaintiff's failure to mitigate her damages otherwise defeated her claims (and did not address the remaining affirmative defenses). The court reasoned that, "[t]he undisputed evidence, based predominately on her own admissions and her testimony at her deposition, demonstrates that [plaintiff] consistently failed to participate in the Section 15 process" despite ample opportunity to do so. Thus, plaintiff's "failure in receiving a higher price for her unit was caused by her own inaction." Accordingly, the circuit court entered summary judgment in defendants' favor on all remaining claims.

¶ 33        Plaintiff timely filed a notice of appeal.

¶ 34                                II. ANALYSIS

¶ 35        On appeal, plaintiff challenges the circuit court's entry of summary judgment in defendants' favor on all claims (but does not challenge the entry of summary judgment in favor

of the defendant master association). Each of the remaining claims—breach of fiduciary duty, fraud,[1] and civil conspiracy—are rooted in fiduciary duty principles. For the reasons set forth below, we hold that the circuit court did not err in entering summary judgment in defendants' favor on all claims.

¶ 36 Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). A triable issue of fact exists where there is a dispute as to a material fact or where, although the material facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Id.* at 162-63. "[W]hile a plaintiff responding to a motion for summary judgment is not required to prove her case at the summary judgment stage, she must, nevertheless, present enough evidentiary facts to support the elements of her claim." *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 250 (1991). We review summary judgment rulings *de novo. Bagent*, 224 Ill. 2d at 163.

¶ 37 A. Breach of Fiduciary Duty

¶ 38 To succeed on a claim for breach of fiduciary duty, a plaintiff must prove: (1) the defendant had a fiduciary duty; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) proximate cause existed between the breach and the damages. *Feliciano v. Geneva Terrace Estates Homeowners Ass'n*, 2014 IL App (1st) 130269, ¶ 35. There is no dispute

_____

[1] Plaintiff limits her arguments on appeal to constructive fraud only.

13

that defendants, as building 6 association board members, owed a fiduciary duty to all unit owners, including plaintiff. See 765 ILCS 605/18.4 (West 2018) ("In the performance of their duties, the officers and members of the [condominium] board *** shall exercise the care required of a fiduciary of the unit owners"); *Kai*, 2020 IL App. (2d) 190642, ¶ 19, 25 ("[c]ondominium association board members owe a fiduciary duty to other unit owners," and nothing in section 15 supplants board members' common law duty to act as unit owners' fiduciaries).

¶ 39     As for whether defendants breached their fiduciary duty, the parties argue at length as to what information was conveyed to the unit owners in advance of the vote. While defendants cite the information provided to the unit owners regarding the section 15 process generally, plaintiff responds that defendant board members did not disclose their interest in the purchaser, Mosaic Beverly. Plaintiff cites her deposition testimony to support that this information was not disclosed; defendants cite the deposition testimony of a former plaintiff to support that the information was disclosed. The parties also dispute whether defendants were required to disclose the valuations from the appraisal Mosaic Spring Hill obtained in 2016 when it purchased the 213 units in the Spring Hill complex (and also dispute the purpose for which the circuit court allowed admission of this appraisal).

¶ 40     As for damages, plaintiff persists in her theory that the measure of her actual damages is the difference between her proportionate share of the contract price and the proportionate value of her unit (based on Mundie's valuation of building 6), *i.e.*, $42,157.38. Defendants counter that plaintiff failed to present any evidence that could establish a reasonably certain measure of her damages. See *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 383 (2004) (damages must be established to a "reasonable degree of certainty," and the supporting evidence cannot be "remote, speculative, or uncertain"). Defendants point out that Mundie did not appraise

14

plaintiff's individual unit and that plaintiff's method of calculating her unit's value is contrary to the average appraised value method by which all other non-Mosaic unit owners' units were valued, as well as the individual unit appraisals conducted pursuant to section 15(b), which accounted for each unit's condition and attributes. Defendants further argue that plaintiff's punitive damages claim fails in the absence of an actual damages claim.

¶ 41    Ultimately, however, the above disputes are not material, as we agree with the circuit court that the record demonstrates no genuine of material fact as to the proximate cause element of plaintiff's breach of fiduciary duty claim. "[P]roximate cause may be determined as a matter of law where the facts show that the plaintiff would never be entitled to recover." *Feliciano*, 2014 IL App (1st) 130269, ¶ 37. Proximate cause contains two requirements: cause in fact and legal cause. *Id.* "A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury." (Internal quotation marks omitted.) *Id.* If the plaintiff's injury would not have happened absent the defendant's conduct, then the conduct is a material element and substantial factor in bringing about the injury. *Id.* However, "[i]f the defendant's conduct does nothing other than furnish a condition by which the injury is made possible, and the condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Id.*

¶ 42    Here, the record demonstrates the lack of proximate cause between the alleged breach and damages. Simply put, the purported deficiencies in disclosures as to the board members' interest in Mosaic Beverly and the 2016 appraisal would not have changed the outcome, as plaintiff and all former plaintiff unit owners voted against the sale. Further, as the circuit court aptly noted, "It was ultimately [plaintiff's] failure to act under Section 15 that actually and

15

proximately caused her damages." Thus, approval of the bulk sale by the unit owners was merely a condition that made a potential injury possible, but it was plaintiff's failure to act under section 15 that actually and proximately caused her purported damages. All former plaintiffs followed section 15, and all former plaintiffs received a higher value for their unit than what was originally offered. Accordingly, there was no genuine issue of material fact as to the proximate cause element of plaintiff's breach of fiduciary duty claim, and summary judgment in defendant's favor on the claim was warranted.

¶ 43    Having concluded that summary judgment was properly entered in defendants' favor on the breach of fiduciary duty claim, we necessarily conclude that summary judgment was likewise properly entered in defendants' favor on the constructive fraud claim (see *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 74 (to prove constructive fraud, a plaintiff must establish a fiduciary relationship, breach of the duties that are imposed as a matter of law due to that relationship, and damages; constructive fraud "springs" from a breach of fiduciary duty) (Internal quotation marks omitted)), and on the conspiracy claim (see *540 North Lake Shore Drive Condominium Ass'n v. MCZ Development Corp.*, 2025 IL App (1st) 230733, ¶ 64 ("Having affirmed the dismissal of the predicate tort claims, the civil-conspiracy claim resolves itself. A civil conspiracy requires an underlying tort in furtherance of the conspiracy.")).

¶ 44                              B. Affirmative Defenses

¶ 45    In addition to the foregoing analysis, we hold that the circuit court properly granted summary judgment on the affirmative defenses of the doctrine of avoidable consequences and failure to mitigate damages. " 'Illinois has long recognized the applicability, in questions of damages, of the doctrine of avoidable consequences, which prevents a party from recovering damages for consequences which that party could reasonably have avoided.' " *Union Planters*

16

*Bank, N.A. v. Thompson Coburn LLP,* 402 Ill. App. 3d 317, 356 (2010) (quoting *Maere v. Churchill*, 116 Ill. App. 3d 939, 946 (1983)). The doctrine "addresses itself to the equity of the law that a plaintiff should not recover for those consequences of defendant's act which were readily avoidable by the plaintiff." (Internal quotation marks omitted.) *Kelly v. Chicago Park District*, 409 Ill. 91, 98 (1951). The doctrine of avoidable consequences applies not only to contract cases, but also to actions in tort. See, *e.g.*, *Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.,* 2012 IL App (2d) 110718, ¶ 61 (legal malpractice action). Likewise, the duty to mitigate damages requires an injured party to use reasonable diligence and ordinary care to minimize damages. *Mayster v. Santacruz*, 2020 IL App (2d) 190840, ¶ 34.

¶ 46    Here, plaintiff premised her damages theory on the purported difference between the amount she received for her unit and its actual value, which she claims was greater than she was paid.  But therein lies the rub; all plaintiff had to do to avoid the claimed damages was to pursue the appraisal procedure set forth in section 15, whereby, after filing a written objection a panel of three appraisers would have determined the value of her unit, resulting in a more advantageous sales amount if appropriate. 765 ILCS 605/15(a), (b) (West 2018). Indeed, this was exactly the approach taken by the former plaintiffs. As the circuit court found, plaintiff's failure to receive a higher price for her unit was caused by her own inaction. Plaintiff argues that the Second District Appellate Court previously allowed plaintiff's suit to proceed even though she did not utilize the section 15 procedures available to unit owners. See *Kai*, 2020 IL App (2d) 190642. That holding, however, merely reversed the circuit court's dismissal of plaintiff's suit based upon the erroneous conclusion that section 15 provided the sole remedy. *Id.* ¶¶ 19-20, 26. The procedural posture here is dispositively different—the affirmative defenses were filed on remand in response to the revived claim; discovery proceeded; and the circuit court granted defendants'

17

summary judgment motion. Simply put, the circuit court properly granted summary judgment for defendants where plaintiff failed to take reasonable and readily available steps to avoid the consequences for which she now complains and mitigate her damages.

¶ 47                                    III. CONCLUSION

¶ 48        The judgment of the circuit court of Du Page County is affirmed.

¶ 49        Affirmed.

¶ 50        JUSTICE ANDERSON, dissenting:

¶ 51        I respectfully dissent because, in my view, the trial court's grant of summary judgment on Jordan's claim of breach of fiduciary duty, and on defendants' affirmative defenses, was improper. Summary judgment is a drastic remedy and should only be granted when the moving party's right to judgment is clear and free from doubt. *Englewood Construction, Inc. v. J.P. McMahon Properties, LLC*, 2025 IL App (3d) 240389, ¶ 60. Here, summary judgment was inappropriate because questions of material fact remained regarding whether Dresdner, Blitstein, and Blatt breached their fiduciary duty to Jordan as board members, whether their breach was the proximate cause of her injury, and whether her failure to utilize the panel procedure in section 15 resulted in her damages. I would reverse the trial court's grant of summary judgment and remand for trial.

¶ 52        Section 18.4 of the Act requires board members of a condominium association to act as fiduciaries to the unit owners. 765 ILCS 605/18.4 (West 2018). As such, each board member has a strict duty to treat unit owners with the utmost candor, rectitude, care, loyalty, and good faith, and, in fact, to treat them as he would treat himself. *Boucher v. 111 East Chestnut Condominium Ass'n*, 2018 IL App (1st) 162233, ¶ 36. Jordan alleges that the defendant board members failed to meet that standard. She asserts that theirs was a well-calculated scheme by sophisticated real estate investors to profit at the expense of the unit owners by forcing them into a bulk sale.

18

¶ 53        Section 15(a) of the Act sets out the procedures to be used when a bulk sale is contemplated. 765 ILCS 605/15(a) (West 2018). Section 15(b) provides the procedure for selecting a panel to resolve disagreements as to the value of the interest of a unit owner who did not vote in favor of the sale. 765 ILCS 605/15(b) (West 2018). Thus, section 15(b) is the statutorily created remedy for an injury suffered by a unit owner who has no bargaining power when the sale has been forced upon him under section 15(a).

¶ 54        By its express terms, section 15 does not contemplate any allegations of wrongdoing underlying the bulk sale. Its provisions are silent on the matter. Here, however, 25 objectors to the offered sale price filed suit to protect their interests against acts of deception allegedly perpetrated by the board members. It is of no legal consequence that, ultimately, only Jordan elected not to proceed under section 15's panel appraisal option.

¶ 55        In *Kai*, 2020 IL App (2d) 190642, ¶ 19, the Second District Appellate Court considered the remedies available to a plaintiff seeking relief from alleged fiduciary misconduct in a section 15 bulk sale. The court held that, in addition to section 15's panel remedy, common law remedies remained available when alleging fiduciary wrongdoing. *Id*. Here, however, the majority dismisses *Kai's* pronouncement based simply on the procedural posture of this case. *Supra* ¶ 46. While it is true that the instant case has progressed past the pleading stage on remand, the analysis and remedy discussion in *Kai* still apply. Indeed, *Boulder Hill Condominium Ass'n v. Cope*, 2024 IL App (2d) 230425-U, ¶ 33, relied on that rationale in a similar appeal addressing a motion for summary judgment in a case involving the redress of injuries due to a breach of fiduciary duty in a section 15 bulk sale. The majority here should not brush the holding in *Kai* aside so hurriedly.

¶ 56        The trial court granted summary judgment in favor of the board members by applying the flawed reasoning that Jordan's failure to act under section 15(b) was the proximate cause of her

19

damages. That analysis conflated the proper nexus of conduct to injury and the causal connection between conduct and damages. "It has been noted that, '[although] the words, "damage," "damages," and "injury," are sometimes treated loosely as synonyms, there is a material distinction between them. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered.' " *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758 (1993).

¶ 57 Here, the "injury," or illegal invasion of a legal right, was Jordan's forced sale of her ownership interest based on the board members' allegedly fraudulent conduct. In contrast, the "damage," or harm from the injury, was the unreasonably low amount of money offered to Jordan in exchange for her ownership interest. The "damages," or compensation awarded, would be the sum set by the trial court or jury if Jordan proved the elements of her case. Notably, in *Feliciano*, which was quoted extensively by the majority, the court speaks of proximate cause only between conduct and injury, not between conduct and damages, undermining its persuasiveness in this case. *Feliciano*, 2014 IL App (1st) 130269, ¶ 37.

¶ 58 The majority also relies on the premise that proximate cause of an injury is not established when the defendant furnished "only" a condition that made the injury possible and its actual cause was the subsequent, independent action of a third party. *Supra* ¶ 42. In *Feliciano*, a condominium association board sent a letter to a member requesting that his driveway excavation stop due to questions about the plat of survey. The member subsequently filled up the excavation at great expense, even though he had not been asked to do so. Later, after he was permitted to proceed with the excavation, the member filed a complaint against the association for money damages. That suit ultimately failed because his only injury had been caused by his own independent act of filling in the hole, not by any of the association's actions. *Id.* ¶¶ 36-38. Similarly, in *First Springfield Bank*

20

*and Trust v. Galman*, 188 Ill. 2d 252, 261-62 (1999), our supreme court held that the act of parking a tractor trailer 41 feet from a marked crosswalk was merely a condition that enhanced the possibility of the injury. There, a pedestrian was injured after being struck by a car while trying to cross the street near the truck, which had been parked mid-block. Both *Feliciano* and *Galman* illustrate alleged malfeasance that creates "only" a condition making an injury possible, while an independent act was the actual cause of the injury.

¶ 59    In contrast, the board members' conduct in the instant appeal did not create "only" a condition that enabled an injury to occur. Their conduct was a critical step in the chain of events that resulted in Jordan's injury and claim for damages. Without the board members' alleged malfeasance, Jordan would not have incurred any injury or suffered any damages. In neither *Feliciano* nor *Galman* was the creation of "only" a condition making an injury possible directly linked to any allegations of bad faith or ill motive.

¶ 60    Here, the objectors, including Jordan, alleged that the board members' conduct was calculated to cause the injury incurred, as well as the resultant damages, by forcing the sale of the units at an unreasonably low price, thereby providing the buyers, *i.e.* the defendant board members, with a higher profit. In addition, the buyers' conduct did not merely create a condition that made Jordan's subsequent, independent acts possible. Her injury was alleged to be the direct result of the board members' breach of their fiduciary duties in defrauding unit owners, thereby inducing those owners to accept a low-ball purchase offer in a forced bulk sale, as evidenced by the substantially higher sale prices obtained by objectors opting for the section 15's panel appraisal option. Under those circumstances, the acts and omissions that followed the board members' alleged misconduct constituted a critical part of the causal chain leading directly to Jordan's injury and damages.

21

¶ 61      Examined closely, the determination of whether something is a condition or a proximate cause is simply another way to evaluate cause-in-fact. *Kramer v. Szczepaniak,* 2018 IL App (1st) 171411, ¶ 31. "When *Briske*, *Merlo*, and *Thompson* ask whether the defendant's conduct was a cause of the injury or simply furnished a condition by which the injury was made possible, they are in effect asking whether the defendant's conduct was a material and substantial element in bringing about the injury." *Galman,* 188 Ill. 2d at 259.

¶ 62      Black letter law dictates that proximate cause requires both cause-in-fact and legal cause. *Id*. at 257-58. Cause-in-fact exists if a defendant's conduct was a material and substantial factor in bringing about the injury. *Id*. at 258. In contrast, legal cause is largely a question of foreseeability, examining whether "the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct." (Emphasis in original.) *Id*. at 260. At its core, legal causation is a question of public policy, and the proper inquiry considers how far a defendant's legal responsibility should extend for conduct that did, in fact, cause the harm. *Young v. Bryco Arms,* 213 Ill. 2d 433, 446 (2004). Certainly, the board members here could have reasonably foreseen the injury Jordan incurred from the forced private sale of her unit, along with dozens of other units, the board members' failure to disclose their dual status as board fiduciaries and buyers, and their offer of unreasonably low purchase prices. Those acts and omissions were both the cause-in-fact and the legal cause of Jordan's injury.

¶ 63      Even assuming for the sake of argument that Jordan's failure to seek a remedy from the appraisal panel under section 15 could be deemed an intervening event, the defendants may escape liability only by demonstrating that the event was unforeseeable as a matter of law. *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 57 (1996). Where varying inferences are possible from the evidence, foreseeability creates a question for the fact finder. *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74,

22

84 (1954). Importantly, the record here reveals that the defendants did not offer any argument on foreseeability to either the trial court or this court. Thus, they cannot escape liability for their wrongful acts on that basis.

¶ 64     I also conclude that the trial court erred in granting summary judgment on the basis of the affirmative defenses of avoidable consequences and failure to mitigate damages asserted by the defendants. The trial court seemingly believed that Jordan's exclusive remedy was to seek relief through the section 15 panel option. Because she did not choose that option, the trial court entered summary judgment for the defendants. That conclusion, however, was expressly rejected by the *Kai* court. *Kai*, 2020 IL App (2d) 190642, ¶ 19. That analysis does not change just because the defendants' affirmative defenses were first raised on remand to the trial court. Indeed, it is untenable that a plaintiff who was injured by a wrongdoer in a section 15 bulk sale would be punished merely for developing a sufficiently strong case to succeed in appealing an order of summary judgment. In my view, the analysis and holding in *Kai* are not rendered inapplicable simply because the procedural posture of this case has advanced beyond the pleading stage.

¶ 65     Moreover, the holding in *Kai* comports with section 918 of the Restatement of Torts, which states:

> "(1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort. (2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests." Restatement (Second) of Torts § 918 (1979).

23

¶ 66    Here, the evidence available after the remand was sufficient to create a material question of fact about whether the defendant board members' misconduct intentionally caused the harm that befell Jordan and the other objectors. Under the Restatement, a wrongdoer cannot successfully assert the affirmative defenses of avoidable consequences or failure to mitigate damages unless they can also establish that the injured party *intentionally* failed to act to protect his own interests. As comment c to section 918 states, the plaintiff

> "is required to exercise no more than reasonable judgment or fortitude; and, if different courses of action are open to him he is not required, as a condition to obtaining full damages, to choose the course that events later show to have been the best. He is not barred from full recovery by the fact that it would have been reasonable for him to make expenditures or subject himself to pain or risk; it is only when he is unreasonable in refusing or failing to take action to prevent further loss that his damages are curtailed." Restatement (Second) of Torts § 918 cmt. c (1979).

Consistent with the Second District's ruling in *Kai*, Jordan's continued pursuit of her claims after declining to seek the section 15 panel remedy was not inherently unreasonable. By granting summary judgment against Jordan on the defendants' affirmative defenses solely because she did not purse the section 15 option, the trial court committed error.

¶ 67    I note that this court's reversal of the trial court's summary judgment order and remand for trial would do nothing to ensure Jordan's success on the merits. At trial, she would still be required to prove her case by providing sufficiently persuasive evidence on each of the elements of her claims.

¶ 68    In sum, viewing the evidence in Jordan's favor, as we must, I believe that she has provided sufficient evidence to create a triable issue of material fact or to cause reasonable minds to draw

24

differing inferences. See *Bagent*, 224 Ill. 2d at 162-63 (stating the test when reviewing a motion for summary judgment). Accordingly, the trial court erred by granting the board members' summary judgment motion. I respectfully dissent from the majority's contrary conclusion.